U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 DEC -8 AM 11: 23

CLERK

BY _____
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ANTHONY MICHAEL BETOURNEY- )
PAVAO, o/b/o HUGH MANDLY, deceased, )
                                    )
    Plaintiff,                      )
                                    )
        v.                          )   Case No. 5:14-cv-00011
                                    )
COMMISSIONER OF SOCIAL              )
SECURITY,                           )
                                    )
    Defendant.                      )

**OPINION AND ORDER**
(Docs. 9 & 11)

Hugh Mandly died on January 4, 2011 while his application for disability insurance benefits was pending. His minor son, Anthony Michael Betourney-Pavao, seeks reversal and remand of the Commissioner of Social Security's denial of Mandly's application for disability insurance benefits. See 42 U.S.C. § 405(g). Before the court are Betourney-Pavao's motion to reverse the Commissioner's decision (Doc. 9) and the Commissioner's motion to affirm the decision. (Doc. 11.)

**I.    Background**

Mandly was fifty years old on his alleged disability onset date of December 1, 2008. He completed school through the ninth grade, and subsequently joined the military. He worked as a cashier, a warehouse worker, and a custodian at an elderly housing facility, and also held part-time jobs pumping gas and working as a school janitor. (AR 162.) Mandly lived with his ex-wife during most of the alleged disability period, although at times he lived with his mother-in-law. (AR 149, 1706.) Mandly's son Betourney-Pavao was approximately five years old at the beginning of the alleged disability period. (AR 1818.) Mandly had another son who died in 1997 at the age of thirteen. (AR 579.)

1

Mandly suffered from numerous medical issues including lower back pain, left shoulder pain, chronic obstructive pulmonary disease (COPD), pulmonary hypertension and other cardiac problems, hepatitis C, and cirrhosis. Mandly also had a significant history of drug and alcohol abuse that resulted in numerous hospital admissions and stays at rehabilitation facilities. In October 2008, Mandly fractured his left clavicle after falling down some stairs. (AR 745.) In November 2008, Mandly underwent ankle surgery after he fell in his pool while intoxicated. (AR 327, 343.) In December 2008 and January 2009, Mandly was treated at Northwestern Medical Center (NMC) and Fletcher Allen Health Care (FAHC) on multiple occasions due to altered mental status, injuries resulting from falling while intoxicated, and cardiac arrest due to sepsis. (AR 425, 540, 663, 843, 848, 867.) In October 2009, he was admitted to NMC after he "took too many of his hydrocodone, Ativan and ibuprofen along with alcohol" and fell down the stairs headfirst. (AR 1544, 1557.) On November 25, 2009, Mandly underwent surgery to install a plate on his left clavicle, which had failed to heal properly. (AR 1308.) The surgery went well, but two days later, he was again admitted to the hospital after he fell while intoxicated and suffered multiple subdural hematomas and a brain hemorrhage. (AR 1421.) A few weeks later, his mother in law brought him to the hospital because she witnessed him overdose on his narcotic pain medication. (AR 1403.) In December 2010 he was admitted to NMC with increased lethargy and altered mental status. He was transferred to FAHC, where he died on January 4, 2011. His official cause of death was respiratory failure due to septic shock arising from end-stage liver disease. (AR 1835.)

## II.     Procedural History

In January 2009, Mandly filed an application for disability insurance benefits, alleging that he had been unable to work since March 24, 2007 due to chronic back pain and his heart condition which caused him fatigue and pain. (AR 112-13, 161.) He later alleged that his left clavicle was broken and that since February 2009, he became "very tired" and had to take a nap after standing and walking. (AR 205.) On August 23, 2010, Administrative Law Judge (ALJ) Thomas Merrill held a hearing at which Mandly amended his alleged onset date to December 1, 2008. (AR 1702.)

On October 21, 2010, ALJ Merrill issued a decision finding that Mandly was not disabled from December 1, 2008 to the date of his decision. (AR 1667.) Mandly died on January 4,

2011, and his son appealed the decision to this court. Magistrate Judge Conroy reversed the ALJ decision on the grounds that the ALJ erroneously gave little weight to the opinion of Mandly's treating physician while giving great weight to the opinions of agency consultative examiners, and improperly found that Mandly's substance abuse was nonsevere. (AR 1682-93.)

The Appeals Council then vacated the ALJ's decision and remanded the matter "for further proceedings consistent with the order of the court" and to properly establish Betourney-Pavao as a substitute party. In addition, the Appeals Council stated that the ALJ "will offer the potential substitute party the opportunity for a hearing." (AR 1674.)

ALJ Merrill held a second hearing on August 12, 2013, at which Betourney-Pavao was represented by Margaret Sayles, a non-attorney representative, as well as an attorney. In addition, Mandly's ex-wife Susan Raymo appeared but did not testify, because the ALJ found that her testimony would be cumulative to Mandly's earlier testimony based on the attorney's proffer. (AR 1649.) Following the hearing, the ALJ issued a decision dated September 25, 2013, in which he again found that Mandly was not disabled during the closed period of December 1, 2008 to January 4, 2011. (AR 1638.) The Appeals Council did not review the ALJ's decision, making it the final decision of the Commissioner. This appeal followed.

### III.     The ALJ's Decision

The Commissioner uses a five-step sequential process to decide whether an individual is disabled. See *Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). At the first step, the ALJ determines if the individual is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If not, the ALJ then considers whether the individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or is expected to last continuously for at least twelve months. *Id.* §§ 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii). At the third step, the ALJ considers whether the individual has an impairment that "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. *Id.* §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual is presumed to be disabled if he or she has a listed impairment. *Id.*; *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the individual is not presumptively disabled, the ALJ then considers the individual's residual functional capacity (RFC), which means the most work the claimant can still do despite his or her impairments based on all the relevant medical and other evidence in the record. At this step, the ALJ also considers whether the individual can still perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1545(a); 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the individual can perform "any other work." *Id.* §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g). The claimant bears the burden of proof at steps one through four. *Butts*, 388 F.3d at 380-81. At step five, there is "a limited burden shift to the Commissioner," requiring her to show only "that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

A claimant is not considered to be disabled if alcoholism or drug addiction is "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Thus, if the ALJ determines that the claimant is disabled using the sequential analysis, and there is medical evidence of drug addiction or alcoholism, the ALJ must determine whether the claimant's substance abuse is a contributing factor to the determination of disability. 20 C.F.R. § 404.1535(a). In making this determination, the ALJ must evaluate which of the claimant's physical and mental limitations would remain if he or she stopped abusing drugs or alcohol, and whether any or all of the remaining limitations would be disabling. *Id.* § 404.1535(b)(2).

Applying the sequential framework, the ALJ found that Mandly did not engage in substantial gainful activity during the closed period. He determined that Mandly had the following severe impairments: "degenerative disc disease of the lumbar spine, status post fracture of the left clavicle, chronic obstructive pulmonary disease, pulmonary hypertension, and polysubstance abuse." (AR 1630.) He noted that Mandly had hepatitis C, but found this to be a non-severe condition because there were no opinions indicating that the disease limited Mandly's functional capacity. (AR 1631.) He also found that Mandly did not have any severe mental health impairments in the absence of substance abuse. (AR 1631.)

At step three, the ALJ determined that Mandly's impairments, including the substance abuse disorders, met the criteria for listings 12.04 (affective disorders) and 12.09 (substance addiction disorders). He found that the "paragraph A" criteria were met because while abusing

4

substances, Mandly suffered from symptoms such as anhedonia, decreased appetite with weight loss, sleep disturbance and decreased energy. (AR 1631.) He found that the paragraph B criteria were also satisfied because Mandly demonstrated marked restriction in activities of daily living and marked difficulties in maintaining concentration, persistence, or pace. (AR 1631-32.) He determined that Mandly had only mild restrictions in social functioning, and had not experienced any extended episodes of decompensation. (*Id.*)

The ALJ then considered which of Mandly's limitations would remain if he stopped abusing alcohol and drugs. The ALJ found that without alcohol and drug use, Mandly would have only mild limitations in activities of daily living, social functioning, concentration, persistence and pace. (AR 1633.) Thus, absent substance abuse, Mandly would not have an impairment or combination of impairments that met a mental health listing. (AR 1633.) He also found that none of Mandly's physical impairments were severe enough to meet a listing. (AR 1634.)

Absent alcohol and drug use, the ALJ found that Mandly would have the RFC to perform light work except that he would have been limited to occasional balancing and climbing and to occasional reaching above shoulder level with his left arm. (AR 1634.) He determined that with this RFC, Mandly would have been able to perform his past relevant work as a cashier had he stopped his substance abuse. (AR 1637.) The ALJ concluded that the substance abuse disorder was a contributing factor material to the determination of disability, and therefore that Mandly was not disabled from the alleged onset date to the date of his death. (AR 1638.)

### IV.   Standard of Review

This court reviews the administrative record *de novo* to determine whether the Commissioner's decision is supported by "substantial evidence" and uses the correct legal standard. *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see also* 42 U.S.C. § 405(g). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Poupore*, 566 F.3d at 305 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where there is substantial evidence to support either position, the determination is one to be made by the factfinder. *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). In reviewing a decision of the Commissioner, this

court must be mindful of the remedial purpose of the Social Security Act. *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

### V.     Analysis

Plaintiff argues that the ALJ's RFC assessment was flawed because the ALJ again failed to properly evaluate the opinion of Mandly's treating physician and erroneously gave great weight to the opinions of agency consulting physicians. He further argues that the ALJ's adverse credibility determinations with respect to Mandly's left shoulder pain, fatigue and ability to walk were not supported by substantial evidence. Finally, he argues that the ALJ improperly refused to allow Susan Raymo, Mandly's ex-wife, to testify at the hearing, and improperly prevented his attorney from questioning the vocational expert. The court addresses only the first argument in depth because it is sufficient to warrant reversal, and the court's disposition will affect the credibility determination and may also make further testimony necessary.

As Magistrate Judge Conroy noted in his 2012 decision, Dr. Michael Corrigan was Mandly's treating physician during the alleged disability period. (AR 1682, 1862-89.) Dr. Corrigan treated Mandly during that time for alcoholism, a seizure disorder, chronic subdural hematoma, COPD, pulmonary hypertension, low back pain, and left shoulder pain. (AR 1862-89.) Dr. Corrigan referred Mandly to multiple specialists who submitted their reports to him. (AR 1682.)

Dr. Corrigan opined that Mandly's physical impairments caused extreme limitations with his ability to concentrate and focus on job-related tasks. (AR 1296.) He stated that Mandly would be greatly slower in his ability to complete tasks; would need more than ordinary rest breaks in a workday; could perform activities for only fifteen minutes before needing to rest for fifteen minutes due to shoulder and back pain; could only occasionally lift or carry less than ten pounds; could sit for only twenty minutes at a time; could stand and walk for only twenty minutes at a time; would need to lie down at times over the course of an eight-hour workday; and would be absent from work "very frequent[ly]" as a result of increased anxiety, depression, low back pain, and left shoulder pain. (AR 1296-1300.)

In another report from March 2010, Dr. Corrigan stated that Mandly's anxiety, depression, and alcoholism would cause "substantial loss of ability" in work-related tasks and

would cause him to be absent from work "daily." (AR 1287-88.) A few months later, in July 2010, Dr. Corrigan completed a form stating that he had seen Mandly for regular follow-up visits in April, May, and June; and that Mandly's condition had remained the same. (AR 1621.)

As in his 2010 decision, the ALJ considered Dr. Corrigan's opinion and gave it little weight because it was not well supported by the medical evidence in the record. The ALJ noted that an MRI showed that Mandly had degenerative changes of the lumbar spine but no significant compromise, Mandly retained normal motor and sensory function, and "looked great" while performing a six-minute walk test. In addition, Dr. Corrigan "reported only some tenderness of the lumbar spine in October 2009," and noted that Mandly's gait was normal in November 2009 after Mandly fell while intoxicated. Although he had edema in his lower extremities in May 2010, this responded to medication. The ALJ noted that Mandly's left shoulder responded to the surgery and in May 2010 he was found to have good function in rotation, flexion, extension and abduction of the shoulder. Finally, there was no clinical documentation of Mandly's fine motor limitations in his hands.

The ALJ found that Dr. Corrigan's functional assessment was inconsistent with the 2009 opinions of agency reviewing physicians Geoffrey Knisely, Harris Faigel, and Cynthia Short, who reviewed the record and found that Mandly could perform light work. The ALJ stated that "[r]ecords subsequent to these agency physicians' opinions continue to reflect minimal findings and do not change the weight given them." (AR 1637.) He gave the opinions of these physicians great weight.

In so doing, the ALJ repeated the errors of his 2010 decision and ignored the court's 2012 order. In that order, the court determined that the ALJ erred by giving the opinion of Mandly's treating physician, Dr. Corrigan, little weight because he "failed to consider the length, frequency, and nature of Dr. Corrigan's treatment relationship with Mandly" and failed to discuss the substantial evidence in the record that supported Dr. Corrigan's opinion. *Betourney-Pavao v. Astrue*, No. 2:11-CV-68, 2012 WL 1144032, at *5 (D. Vt. Apr. 4, 2012). The court further determined that it was error for the ALJ to give great weight to the agency consultant opinions for several reasons. None of the agency consultants examined or treated Mandly. Their reports were prepared in 2009 and did not take into account Dr. Corrigan's 2010 and 2011 opinions. Additionally, there was extensive medical evidence in the record that postdated the

7

agency consultants' opinions and supported Dr. Corrigan's opinions. *Id.* at *6. This evidence should have been interpreted by the consultants, rather than the ALJ; it was not the ALJ's role "to decipher the practical significance of these medical reports." *Id.* Because the consultants did not have the full record before them when they issued their opinions, their opinions could not override the treating physician's opinion. *Id.* The court therefore remanded the case for further proceedings. In addition, the court ruled that the ALJ should have found Mandly's polysubstance abuse to be severe and ordered the ALJ to consider, if he found Mandly to be disabled, whether Mandly's substance abuse was a contributing factor.

On remand—despite the court's order—the ALJ again improperly discounted the opinion of Dr. Corrigan and erroneously gave great weight to the same agency consultant opinions in determining RFC. He did not obtain an updated agency consultant opinion regarding Mandly's physical functioning. He relied instead upon the same factors—which the court found inadequate—to dismiss Dr. Corrigan's opinion that Mandly's back and shoulder impairments and the resulting pain severely limited his physical ability to work. Indeed, the language he used in both decisions is virtually identical.[1] The ALJ ignored the court's remand order, which is reversible error. *See Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.").

The question then becomes: what is the proper remedy for the ALJ's error? The district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or

---

[1] The only additional factor the ALJ noted was Dr. Corrigan's report from March 31, 2009 that Mandly "actually looked great while he was walking" during a six-minute walk test. (AR 1636-37.) This was part of the record reviewed by the agency consulting physicians and supports their opinions. But the ALJ failed to discuss conflicting evidence, such as a cardiologist's note in September 2009 that noted Mandly's worsening results on a six-minute walk test, or an August 2010 report by Dr. Corrigan that Mandly "continues to note fatigue walking 1/4 mile." (AR 1361, 1866.) These medical records were not before the agency consulting physicians. Thus, the fundamental problem remains the same: the agency physicians did not have the complete record before them and therefore their opinions did not account for deterioration in Mandly's condition after 2009. The ALJ also dismissed the evidence that postdated the agency consultants' opinions by stating that they "continue to reflect minimal findings." (AR 1637.) However, the ALJ is not entitled "to substitute his own expertise or view of the medical proof for the treating physician's opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Plaintiff argues that the case should be remanded for calculation of benefits because the Commissioner failed to provide medical evidence to contradict Dr. Corrigan's opinions. The Second Circuit has stated that in some cases it is appropriate to remand for calculation of benefits where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision" and evidence of disability is overwhelming. *Butts*, 388 F.3d at 385; *see also Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000) (reversing ALJ decision for refusal to follow treating physician rule, but holding remand for further proceedings unnecessary because record provided "overwhelming proof" that claimant suffered from listed impairment). However, "where the administrative record contains gaps" or "further findings would so plainly help to assure the proper disposition of [the] claim," remand for a rehearing is appropriate. *Butts*, 388 F.3d at 385.

The evidence of physical disability in this case is not so overwhelming that further proceedings would be pointless. *See Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999) (holding remand for calculation of benefits inappropriate because record failed to provide "persuasive evidence of total disability that rendered any further proceedings pointless"). Remand for further proceedings will help to assure the proper disposition of the claim, as the Commissioner may wish to obtain more up-to-date medical opinion evidence concerning Mandly's impairments and symptoms between September 2009 (the date of the most recent agency consulting physician opinion) and his death, or additional vocational expert testimony.

On remand, the ALJ is directed to give great weight to the opinion evidence of Dr. Corrigan for the reasons explained in the court's 2012 decision. The ALJ is also directed to give little weight to the 2009 opinions of agency consulting physicians Short, Knisely and Faigel, as they did not personally examine Mandly and their opinions were made without the benefit of the complete medical record. *See Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability." (quotations omitted)).

The ALJ should also reconsider whether—in light of the altered weight given to the medical opinion evidence—Mandly was credible as to the intensity, persistence and limiting effects of his symptoms. Because reconsideration of the medical opinion evidence may alter the

9

ALJ's credibility determination and the resulting RFC, the court finds it unnecessary to address plaintiff's argument regarding the ALJ's adverse credibility determination.

Further, if an additional hearing is held, plaintiff should be afforded the opportunity to present evidence from Susan Raymo or other witnesses who are competent to testify about how Mandly's symptoms affected his functioning. *See* 20 C.F.R. § 416.929(a) (stating that Commissioner "*will* consider all of your statements about your symptoms, such as pain, and any description you . . . or other persons may provide about how the symptoms affect your activities of daily living and your ability to work" (emphasis added)). The court does not find that the ALJ erred in refusing to allow plaintiff's attorney to question the vocational expert at the 2013 hearing, because no vocational expert was called, and plaintiff's attorney had an adequate opportunity to cross-examine the vocational expert at the 2010 hearing. If there is another hearing, plaintiff has the right to cross-examine the vocational expert if one is called. *See Townley v. Hecker*, 748 F.2d 109, 114 (2d Cir. 1984) (holding that disability benefits claimant has due process right to cross-examine vocational expert at hearing).

## VI.    Conclusion

The court GRANTS plaintiff's motion (Doc. 9) and DENIES the Commissioner's motion (Doc. 11). The decision of the Commissioner is reversed and remanded for further administrative proceedings consistent with this order.

Dated at Rutland, in the District of Vermont, this 8th day of December, 2014.

Geoffrey W. Crawford, Judge
United States District Court